UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        v.                          )    Criminal No. 08-0242 (PLF)
                                    )
GREGORY JOEL SITZMANN,              )
                                    )
        Defendant.                  )
_____)


OPINION

        This matter is before the Court on defendant Gregory Joel Sitzmann's motion to

proceed *pro se* in this criminal case. The government opposes the motion. Mr. Sitzmann also

has filed a motion in which he requests that the Court replace his current court-appointed

counsel, attorney Thomas Abbenante, with substitute counsel. Upon consideration of the parties'

papers, the relevant legal authorities, the arguments presented, and the entire record in this case,

the Court concludes that Mr. Sitzmann has not clearly and unequivocally asserted his right to

proceed *pro se*. The Court therefore will deny his motion to proceed *pro se*. The Court also will

deny Mr. Sitzmann's motion to replace Mr. Abbenante with substitute counsel.[1]

_____

        [1]    The papers reviewed in connection with the pending motions include: defendant's
request to be reinstated as *pro se* counsel ("Def. Req.") [Dkt. No. 110]; defendant's motion
objecting to dismissal of counsel ("Mot. Obj.") [Dkt. No. 134]; defendant's second request to
return to *pro se* status ("Mot.") [Dkt. No. 119]; the government's opposition to defendant's
second request to return to *pro se* status ("Opp.") [Dkt. No. 126]; defendant's reply to the
government's response to defendant's second request to return to *pro se* status ("Reply") [Dkt.
No. 128]; and defendant's request to replace counsel ("Request to Replace Counsel") [Dkt.
No. 136]. The Court also has reviewed the numerous documents that Mr. Sitzmann sent to the
Court. With one exception, all of those documents have been filed on the public docket, some
with minor redactions. As for the one exception, for the reasons stated by the Court in a letter to
counsel on November 21, 2011, that document, submitted to the Court *in camera* on November
3, 2008, neither has been filed on the public docket nor has been provided to counsel for the
government. The Court also has reviewed the transcripts of a number of proceedings held before
this Court, and the transcript of the proceedings held before Magistrate Judge Alan Kay on
August 11, 2008.

## I. BACKGROUND

Gregory Joel Sitzmann was indicted on August 7, 2008, charged with a single count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. <u>See</u> Indictment at 1, Aug. 7, 2008 [Dkt. No. 2]. The conspiracy is alleged to have spanned at least 14 years and have taken place in at least eight countries. <u>Id</u>. At his initial appearance before Magistrate Judge Alan Kay on August 11, 2008, Mr. Sitzmann stated that he wished to proceed *pro se*. He also requested that attorney Joseph Virgilio, who had represented Mr. Sitzmann during the pre-indictment investigation, be appointed as standby counsel; Judge Kay reserved final ruling on Mr. Sitzmann's requests. <u>See</u> Minute Entry, Aug. 11, 2008.

On August 18, 2008, the Court received a letter from Mr. Sitzmann that expressed his dissatisfaction with Mr. Virgilio. Opp., Ex. 3 at 2. In the letter, Mr. Sitzmann stated:

> I was and am convinced that Mr. Virgilio [sic] only interest is to
> "assist" in my pleading guilty and in appeasing the AUSA. . . . I
> ask that you please appoint someone else to represent (or assist) me
> before your court. All I ask is someone that would be willing to
> answer my legal question . . . . If I had faith that someone was
> doing this I would <u>seriously</u> <u>consider</u> <u>changing</u> my <u>pro-se</u> status.
> . . . I only asked to go pro-se because I had no other choise [sic].

<u>Id</u>. (emphasis in original).

During a status conference before this Court on August 25, 2008, Mr. Sitzmann was permitted to proceed *pro se* with attorney Joseph E. Beshouri's assistance. <u>See</u> Minute Entry, Aug. 25, 2008. At that status conference, Mr. Sitzmann stated, "I feel that I will have no problem going forward with [Mr. Beshouri], but at this time, because I haven't had much time to speak with him, I would like to proceed pro se, but leave it open at a later date to change that position if I could." Hr'g Tr. at 3, Aug. 25, 2008. Mr. Beshouri added that he and Mr. Sitzmann

"agreed to some basic ground rules for going forward . . . . neither of us will file anything with the Court without the other knowing it[.]" Id. at 6. The Court refrained from engaging Mr. Sitzmann in a colloquy regarding his *pro se* status at that time; both sides agreed that the Court could perform its colloquy at the next status conference. See id. at 10.

On September 23, 2008, the Court engaged in a colloquy with Mr. Sitzmann about self-representation during which Mr. Sitzmann stated, "I would like to proceed just as I said the last time with you, proceeding pro se until I can find out something else." Hr'g Tr. at 3, Sept. 23, 2008 [Dkt. No. 54]; see also Minute Entry, Sept. 23, 2008. When asked why he wanted to represent himself, Mr. Sitzmann replied: "[B]ecause right now the situation is, the first attorney [Mr. Virgilio] that was appointed to me I think at the very least was — to say was not even helping me." Hr'g Tr. at 4, Sept. 23, 2008 [Dkt. No. 54]. When asked what his thoughts were on Mr. Beshouri, Mr. Sitzmann replied: "[A]t this point I had asked to go pro se because I had no other choice. . . . [B]ut by the time we have the next conference I think that we will be able to make a decision on it for you." Id. at 5.

On October 17, 2008, Mr. Sitzmann filed a *pro se* motion for replacement of standby counsel, see Mot. for Replacement of Stand-By Counsel at 1, Oct. 17, 2008 [Dkt. No. 13]; Mr. Beshouri, however, continued to file motions on behalf of Mr. Sitzmann, including one filed on October 31, 2008. See Dkt. No. 15. On November 3, 2008, the Court received a letter from Mr. Sitzmann in support of his request to replace Mr. Beshouri. See Letter from Gregory J. Sitzmann to the Court, Nov. 3, 2008.[2] In this letter, Mr. Sitzmann stated that he

---

[2]     This November 3, 2008 letter neither has been filed on the public docket nor has been provided to government counsel. See supra n.1.

requested that Mr. Beshouri be dismissed because: (1) Mr. Beshouri was unable to procure Mr.

Sitzmann's release from protective custody for over a month; (2) Mr. Beshouri did not permit

Mr. Sitzmann to make specific requests to a private investigator without Mr. Beshouri's

permission — although permission was given in the one instance Mr. Sitzmann discussed; and

(3) Mr. Beshouri was not providing discovery materials to Mr. Sitzmann at the rate Mr. Sitzmann

would like.  See id. at 5.

   The Court held a status conference on November 3, 2008, in part to discuss Mr.

Sitzmann's request.  See Hr'g Tr. at 2, Nov. 3, 2008 [Dkt. No. 50].  There, Mr. Beshouri

represented that Mr. Sitzmann had expressed displeasure at the delay in transferring Mr.

Sitzmann from protective custody to the general population at the D.C. Jail.  Id. at 4.  Mr.

Sitzmann also indicated that he was displeased with the motions Mr. Beshouri was filing on his

behalf.  See id. at 7.  After the Court refused to grant Mr. Sitzmann's request to receive a third

standby counsel and presented him with the choice between proceeding on his own or with Mr.

Beshouri's assistance, Mr Sitzmann stated: "At this point if we can go ahead and see if we can

work this out, I'd rather go ahead with Mr. Beshouri.  By no means have I thought that Mr.

Beshouri is not a competent attorney."  Id. at 9.

   Mr. Sitzmann reiterated his position at another status conference on November 7,

2008, stating, "I spoke with Mr. Beshouri and we worked everything out, and I can almost assure

the Court that it would not be filed again, any type of motion like that."  Hr'g Tr. at 2, Nov. 7,

2008 [Dkt. No. 55].  Mr. Beshouri stated: "I don't want to ask the Court to get in the middle of

these disputes, but I have advised Mr. Sitzmann that in the future I will not be able to stand by if

he should make claims that I think have no grounding in fact . . . . [W]ith that said, it seems as though things are fine now between Mr. Sitzmann and me." Id. at 3.

Mr. Sitzmann then sent the Court a letter, which it received on December 24, 2008. In the letter, Mr. Sitzmann announced his desire not to proceed *pro se* and to retain a new attorney with his own funds or funds provided by an associate. See Opp., Ex. 5 at 1-2. He stated that when he "agreed[] to allow Joe Beshouri to continue as stand-by counsil [sic] . . . . [he] believed [he] would be able to retain private counsil [sic] before the next hearing[.]" Id. at 1.

On January 5, 2009, the Court received a motion "for reconsideration of replacing stand by counsel." Motion for Reconsideration at 1, Filed with the Court on Jan. 14, 2009 [Dkt. No. 22]. In this motion, Mr. Sitzmann represented that he had filed a complaint with the District of Columbia Bar against Mr. Beshouri (1) because Mr. Beshouri would not hire the private investigation firm Mr. Sitzmann requested; (2) because of alleged improper conduct between Mr. Beshouri and a private investigation firm; and (3) because of the above-stated delay in releasing Mr. Sitzmann from protective custody. See id. at 1-3. But at a status conference that same day, Mr. Sitzmann stated that "things ha[d] changed[,]" Hr'g Tr. at 3-4, Jan. 5, 2009 [Dkt. No. 56], and he provided the Court with a letter requesting to withdraw his renewed motion to replace standby counsel. Letter from Gregory J. Sitzmann to the Court, Jan. 4, 2009; see also Hr'g Tr. at 3, Jan. 5, 2009 [Dkt. No. 56]. Mr. Sitzmann also reaffirmed that he had intended to retain his own counsel from the start, but felt he could not do so while in protective custody. See Hr'g Tr. at 4-5, Jan. 5, 2009 [Dkt. No. 56]. Mr. Sitzmann also asked that "[i]f we do need local counsel, can Mr. Beshouri stay in on that?" Id. at 16.

At a status conference on February 3, 2009, Mr. Sitzmann represented to the Court that he had engaged attorney Richard Klugh. Hr'g Tr. at 2, Feb. 3, 2009. He stated: "What I'd like to do is when he comes on-board, which is pro se, but be counsel, co-counsel with Mr. Klugh." Hr'g Tr. at 8, Feb. 3, 2009. The Court expressed doubt:

> I don't think you have a constitutional right to be co-counsel, whether with a retained or an appointed lawyer. . . . So you should operate on the assumption for now that there's a very good chance that you will not be able to be co-counsel. Either he's going to be your lawyer of record and you will be a client and nothing more, or you're going to be pro se. And you'll have stand-by counsel, whether it's Mr. Klugh or Mr. Beshouri.

Id. at 9-10.

On February 26, 2009, Mr. Beshouri filed a motion to withdraw from the case because he had been selected to become a Magistrate Judge in the Superior Court of the District of Columbia. Motion to Withdraw at 1, Feb. 26, 2009 [Dkt. No. 35]. In that motion, Mr. Beshouri stated that he had learned, on January 6, 2009 — the day after Mr. Sitzmann had represented to the Court that he would like to continue with Mr. Beshouri if possible and two days after he requested by letter to the Court that his renewed motion to replace Mr. Beshouri be withdrawn — that "Mr. Sitzmann wrote to Assistant United States Attorney George Eliopoulos and requested that [Mr. Eliopoulos] 'have no more contact with Mr. Beshouri — the court appointed stand-by counsel. That in the future all communications and or contact be thru [Mr. Sitzmann.]'" Id. at 2. The Court granted Mr. Beshouri's motion to withdraw on March 19, 2009.

At a status conference on March 18, 2009, Mr. Klugh appeared and stated that his "intention is to become the counsel, ordinary, regular counsel in the case." Hr'g Tr. at 7, Mar.

18, 2009 [Dkt. No. 57].  He added, "it's clearly our intention to completely cover the field and not leave any attorney room for Mr. Sitzmann in this.  He would have plenty of client room, but no attorney room."  Id. at 9.  The Court then addressed Mr. Sitzmann to confirm his understanding that he was not permitted to be co-counsel with Mr. Klugh; Mr. Sitzmann replied, "[a]s I wrote in my January 5th letter to you, that was my intention from the beginning."  Id. at 12.  Mr. Sitzmann added: "My intention is for [Mr. Klugh] to handle the case and any legal aspect, and I will not have any intention of filing anything pro se or being involved in it."  Id. During the hearing, Mr. Klugh stated he could not become counsel of record until he had assurance that Mr. Sitzmann, or an associate, would in fact be able to compensate him for his services; he stated that he expected the matter to be resolved within ten days.  See id. at 8-10.

Mr. Klugh, however, did not begin to represent Mr. Sitzmann as counsel of record for many months.  Instead, on May 11, 2009, attorney Mark Carroll appeared as standby counsel for Mr. Sitzmann.  During a sealed status conference on May 22, 2009, Mr. Carroll stated that Mr. Klugh had not been paid and that Mr. Sitzmann was unwilling to proceed with Mr. Carroll as appointed counsel because Mr. Sitzmann intended to continue to file motions on his own behalf. Yet as standby counsel, Mr. Carroll filed a bond motion on behalf of Mr. Sitzmann, see Def. Mot. to Modify Conditions of Release at 6, Oct. 7, 2009 [Dkt. No. 43], and continued to speak on his behalf during status conferences.  See Hr'g Tr. at 17-18, July 27, 2009 [Dkt. No. 52].  On December 18, 2009, Mr. Carroll filed a motion to withdraw, which was granted on January 5, 2010.

Mr. Klugh entered a formal appearance as counsel for Mr. Sitzmann on December 29, 2009.  After entering the case, Mr. Klugh re-filed a number of motions on issues that had

already been briefed and argued before the Court.  He presented oral argument on numerous

motions during a lengthy motions hearing on July 12, 2010.  <u>See</u> Minute Entry, July 12, 2010;

<u>see</u> <u>also</u> Dkt. No. 85.  Mr. Klugh continued to represent Mr. Sitzmann until February 2, 2011,

when he orally moved to withdraw from the case on the ground that there was a potential conflict

of interest.  <u>See</u> Hr'g Tr. at 80, Feb. 2, 2011 [Dkt. No. 102].  Mr. Klugh again expressed his

belief that he should withdraw as counsel at a status conference on April 7, 2011.  <u>See</u> Hr'g Tr.

at 24, Apr. 7, 2011 [Dkt. No. 105].  The Court responded:

> [I]f you are ready to decide that you think the better course is to
> withdraw, then go ahead and withdraw . . . . If you are ready to
> make that decision, make that decision.  Talk to your client, put it
> in writing, withdraw. . . . It's up to you.  So when can we talk again
> to have an answer to that question from you, what your role is
> going to be, what Mr. Bergendahl's [Mr. Klugh's retained
> co-counsel] role is going to be?  And then we can move on to
> either proceed with one or both of you or proceed with neither of
> you and get somebody else in full time to represent Mr. Sitzmann.
> But I do think you need to think about it and talk to each other and
> Mr. Sitzmann.

<u>Id</u>. at 31, 33.

On April 10, 2011, Mr. Sitzmann sent the Court a letter in which he questioned

Mr. Klugh's ability to provide effective representation due to alleged psychological and financial

difficulties.  <u>See</u> Letter from Gregory J. Sitzmann to the Court, Apr. 10, 2011 [Dkt. No. 132].  In

the letter, Mr. Sitzmann stated that those alleged difficulties "clearly raise[] the question if either

has affected his judgment and or decisions concerning the Defendant and if all decisions had

been 'done in the best interest of his client[.]'"  <u>Id</u>. at 4.

Mr. Klugh filed a notice of his position on the conflict of interest on April 12,

2011.  And Mr. Klugh and Mr. Bergendahl then filed a motion to withdraw on April 18, 2011.

That day, the Court held a status conference in which it agreed to accept the withdrawal of Mr. Klugh and Mr. Bergendahl and appointed attorney Thomas Abbenante to represent Mr. Sitzmann under the Criminal Justice Act. See Minute Entry, Apr. 18, 2011; see also Hr'g Tr. at 7-8, Apr. 18, 2011 [Dkt. No. 117]. Mr. Abbenante stated that Mr. Sitzmann "indicated to [Mr. Abbenante] to represent to the Court that . . . [Mr. Sitzmann] would accept [Mr. Abbenante] as his counsel from this point forward." Hr'g Tr. at 8, Apr. 18, 2011 [Dkt. No. 117]. Mr. Sitzmann stated in open court that he "ha[d] no problem with Mr. Klugh and [Mr. Bergendahl] withdrawing." Id. at 18. To ensure that Mr. Sitzmann was in full agreement with Mr. Klugh's withdrawal, at the Court's insistence he repeated several times that he had no objection to either counsel withdrawing. See id. at 22 ("[I]f Mr. Klugh wants to withdraw, I have no objections and I'm satisfied with him."); id. at 24 ("Mr. Klugh can withdraw. I have no problem with that."); see also id. at 24 ("MR. ABBENANTE: . . . . You don't have an objection to either one of them[, that is, Mr. Klugh or Mr. Bergendahl] withdrawing? THE DEFENDANT: *Absolutely not*.") (emphasis added).

On June 2, 2011, Mr. Sitzmann sent the Court and counsel for the government two *pro* se motions: (1) "REQUEST[ing] TO BE REINSTATED AS PRO-SE COUNSEL AND HAVE ADDITIONAL STAND-BY COUNSEL APPOINTED," Def. Req. at 1 (emphasis in original); and (2) "OBJECTING TO COURTS [sic] DISMISSAL OF [Mr. Klugh]." Mot. Obj. at 1 (emphasis in original). Mr. Sitzmann requested that the Court "reinstate Defendant to his previous Pro-se statues [sic] and appoint two additional Attorneys to assist Defendant and Mr. Abbenante in preparing and presenting Defendant's case[.]" Def. Req. at 2. In direct contradiction to his statements at the April 18, 2011 status conference, Mr. Sitzmann asserted

that the Court "chose to dismiss Defendant's retained Counsel, *over his objection[.]*"  Id.

(emphasis added).  But he then simultaneously acknowledged that he had agreed to dismiss Mr.

Klugh and Mr. Bergendahl and appoint Mr. Abbenante at the April 18, 2011 status conference.

See id. at 2 ("At the [April 18, 2011] hearing this Court announced that it was dismissing

Defendant's retained Counsel and appointed Mr. Thomas Abbenante to represent Defendant, *to

which he agreed*.") (emphasis added).

      In Mr. Sitzmann's motion objecting to the Court's dismissal of his counsel, he

claimed that, at the April 7, 2011 hearing, "AT NO TIME WAS THE ISSUE MENTIONED

THAT [Mr. Klugh] OR ANYONE OF THE DEFENSE TEAM WOULD BE REQUESTING TO

WITHDRAW AS COUNSEL."  Mot. Obj. at 2 (emphasis in original).  He further claimed that,

at the April 18, 2011 hearing, Mr. Sitzmann was "taken completely by surprise[,]" and

"responded in a clearly confused state" in accepting Mr. Klugh and Mr. Bergendahl's

withdrawal.  Mot. Opp. at 2.

      The Court held a status conference on June 15, 2011.  At that status conference,

the parties addressed Mr. Sitzmann's two June 2, 2011 motions.  Mr. Abbenante stated that it

was his understanding from his discussions with Mr. Sitzmann that Mr. Sitzmann was not in fact

requesting permission to proceed *pro se*.  As Mr. Abbenante described it, Mr. Sitzmann was

expressing the concern that Mr. Abbenante, as a solo practitioner, would be too busy to handle

this case by himself; therefore, Mr. Sitzmann was requesting that the Court appoint an additional

attorney or two — and possibly even reappoint Mr. Klugh — to assist Mr. Abbenante in the

preparation of this case.  The Court orally denied that request.  As the Court stated, if Mr.

Sitzmann actually was requesting that the Court reappoint Mr. Klugh, it would be inappropriate

to do so in view of the allegations made by Mr. Sitzmann about Mr. Klugh. As for Mr. Sitzmann's request for additional attorneys, the Court stated that, under the Criminal Justice Act, a defendant usually is only entitled to one court-appointed attorney.

On August 18, 2011, Mr. Sitzmann filed a "SECOND REQUEST TO RETURN TO PRO-SE STATUS" in which he stated, in full: "COMES NOW Defendant, Gregory J. Sitzmann, who is represented by Counsel, requesting this Honorable Court allow Defendant to return to his previous Pro-se status." Mot. at 1 (emphasis in original). The government filed an opposition to Mr. Sitzmann's motion on September 22, 2011, in which it argued that Mr. Sitzmann has waived his right to proceed *pro se*. See Opp. at 1. Mr. Sitzmann, through Mr. Abbenante, filed a reply on September 26, 2011, requesting a status conference to discuss the issue. Reply at 2.

Shortly thereafter, in a letter to the Court dated October 8, 2011, Mr. Sitzmann accused Mr. Abbenante of possibly having engaged in some type of alleged criminal conduct unrelated to this case. See Letter from Gregory J. Sitzmann to the Court at 1, Oct. 8, 2011 [Dkt. No. 133]. Mr. Sitzmann attached to that October 8, 2011 letter an earlier letter he allegedly sent to counsel for the government on September 28, 2011. In that September 28, 2011 letter, Mr. Sitzmann alleges that Mr. Abbenante expressed his intent to transport the ashes of a deceased friend to Italy in order to spread them at the Vatican. Id., Attach. 1, Letter from Gregory J. Sitzmann to the George Eliopoulos at 1-2, Sept. 28, 2011. As Mr. Sitzmann described it, Mr. Abbenante allegedly acknowledged that this action was illegal, see id. at 2, but was doing it to fulfill his friend's wish. See id. at 1.

On October 27, 2011, the government responded to Mr. Sitzmann's allegations against Mr. Abbenante, stating that it "has researched this issue and has found no authority indicating that the transportation of cremated human remains on an airplane violates federal law. To the contrary, the United States Transportation Security Administration . . . has published guidance . . . . provid[ing] that passengers on aircrafts are permitted to carry cremated remains[.]" Gov't Resp. ¶ 3, Oct. 27, 2011 [Dkt. No. 130]. In the government's view, Mr. Sitzmann's allegations against Mr. Abbenante were further attempts to "manipulate the Court," and were made "to again create a conflict of interest between himself and his lawyer in the hopes that the Court relents and allows [Mr. Sitzmann] to appear pro se." Id. ¶ 4.

At a status conference the next day, October 28, 2011, the Court explained to Mr. Sitzmann that, if it permitted Mr. Sitzmann to represent himself, he could not expect standby counsel to take an active role in the trial by examining and cross-examining witnesses, asserting objections, and making the opening statement and closing argument. Mr. Sitzmann again reaffirmed that he wished to proceed *pro se*. Before making a final decision on the matter, the Court provided the parties the opportunity to submit supplemental briefing regarding Mr. Sitzmann's request to proceed *pro se* by November 8, 2011. See Minute Entry, Oct. 28, 2011.

On November 3, 2011, the Court received a pair of letters from Mr. Sitzmann. The first letter was in reply to the government's response to his allegations that Mr. Abbenante might have broken the law. See 1st Letter from Gregory J. Sitzmann to the Court, Nov. 3, 2011 ("Reply to Resp.") [Dkt. No. 137]. The second letter requests that the Court replace Mr. Abbenante as trial counsel. See Request to Replace Counsel at 1-2. In the first letter, Mr. Sitzmann disputes the government's assertion that Mr. Sitzmann's allegations were made to

create a conflict of interest between himself and Mr. Abbenante.  <u>See</u> Reply to Resp. at 1.  In the

second letter, however, Mr. Sitzmann argues that there now is a conflict of interest between

himself and Mr. Abbenante because Mr. Abbenante stated he considered the allegations a

"personal attack against him[,]" and thus Mr. Sitzmann cannot "trust [that] the representation by

Mr. Abbenante is being done 'for the best interest of the client[.]'"  Request to Replace Counsel

at 1.  Mr. Sitzmann therefore requested "a change of court appointed counsel."  <u>Id</u>. at 2.

     Finally, on November 9, 2011, the Court received an additional letter from Mr.

Sitzmann, dated November 3, 2011, in which he "enclosed 2 letters for [the Court] to consider in

making [a] decision concerning the pending motions for [him] to return to pro-se and for [his]

request to change counsel."  3d Letter from Gregory J. Sitzmann to the Court, Nov. 3, 2011 [Dkt.

No. 135].  In the second of the enclosed letters, addressed to Mr. Abbenante and dated April 25,

2011, Mr. Sitzmann stated: "[A]though [Mr. Abbenante is] very qualified to represent me [he is]

a single practitioner and doing this for CJA funds.  I need to get the Court to reappoint my

COUNCEL [sic] OF CHOICE, Richard [Klugh] and John [Bergendahl], and leave you as the

local Counsel[.]"  <u>Id</u>., Attach. 2, Letter from Gregory J. Sitzmann to Thomas Abbenante at 1,

Apr. 25, 2011.

## II.  DISCUSSION

     "The Sixth and Fourteenth Amendments of our Constitution guarantee that a

person brought to trial in any state or federal court must be afforded the right to the assistance of

counsel before he can be validly convicted and punished by imprisonment."  <u>Faretta v.

California</u>, 422 U.S. 806, 807 (1975).  "[T]he Sixth Amendment right to the assistance of counsel

implicitly embodies a correlative right to dispense with a lawyer's help." Id. at 814 (quotations omitted). Thus, "an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel." United States v. Ellerbe, 372 F.3d 462, 466 (D.C. Cir. 2004) (quoting Faretta v. California, 422 U.S. at 814) (internal quotations omitted).

A "defendant[' s] exercise of the . . . right to proceed *pro se* . . . necessarily involve[s] an abandonment of the explicit Sixth Amendment right to the assistance of counsel." United States v. Weisz, 718 F.2d 413, 425 (D.C. Cir. 1983). For that reason, "the Supreme Court has enjoined courts to 'indulge in every reasonable presumption against waiver' of the right to counsel[.]" Id. (quoting Brewer v. Williams, 430 U.S. 387, 404 (1977)). "[B]ecause criminal defendants will likely fare better with the assistance of counsel than without, a defendant will be permitted to represent himself only when he 'knowingly and intelligently' relinquishes his right to counsel." United States v. Bankoff, 613 F.3d 358, 373 (3d Cir. 2010) (quoting Faretta v. California, 422 U.S. at 835).

Three requirements must be met before a defendant may be allowed to proceed *pro se*. United States v. Bankoff, 613 F.3d at 373.

> (1) [The defendant] must "assert his desire to proceed *pro se* clearly and unequivocally"; (2) the court must "inquire thoroughly to satisfy itself that" the request is knowing and intelligent; and (3) the court must "assure itself that the defendant is competent to stand trial."

*Id.* (quoting United States v. Peppers, 302 F.3d 120, 132 (3d Cir. 2002)); see also United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000); United States v. Baker, 84 F.3d 1263, 1264 (10th Cir. 1996).

"The right to self-representation does not attach until it is asserted 'clearly and unequivocally.'" Williams v. Bartlett, 44 F.3d 95, 100 (2d Cir. 1994) (quoting Faretta v. California, 422 U.S. at 835). Accordingly, "[t]he law presumes that a defendant has not exercised his right to represent himself nor waived the right to counsel in the absence of an articulate and unmistakable demand by the defendant to proceed *pro se*." United States v. Leggett, 81 F.3d 220, 224 (D.C. Cir. 1996) (citing United States v. Tarantino, 846 F.2d 1384, 1420 (D.C. Cir. 1988)). "The purpose of requiring . . . an 'unequivocal' request . . . is twofold. First, unless the request is unambiguous and unequivocal, a convicted defendant could have a colorable Sixth Amendment appeal regardless of how the trial judge rules[.]" Williams v. Bartlett, 44 F.3d at 100. "Second, the requirement of an unambiguous and unequivocal request inhibits any 'deliberate plot to manipulate the court by alternatively requesting, then waiving counsel.'" Id. at 101 (quoting United States v. Tompkins, 623 F.2d 824, 828 (2d Cir. 1980)).

"In ambiguous situations created by a defendant's vacillation or manipulation, [courts] must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." United States v. Frazier-El, 204 F.3d at 559 (citing United States v. Singleton, 107 F.3d 1091, 1102 (4th Cir. 1997)). Similarly, "[a] request to represent oneself made while at the same time stating a preference for representation by a different lawyer . . . is insufficient to invoke Faretta" — that is, the right to self-representation.

<u>United States v. Mendez-Sanchez</u>, 563 F.3d 935, 939 (9th Cir. 2009).  In addition, when a defendant requests hybrid representation by requesting to put on his defense in conjunction with appointed counsel, he has not unambiguously asserted his <u>Faretta</u> right.  <u>See</u> <u>United States v. Tarantino</u>, 846 F.2d at 1420 ("Burns never made . . . an unambiguous claim to represent himself. . . . Instead, he seemed to desire some sort of hybrid form of representation, whereby both he and his appointed counsel would be permitted to examine witnesses, make objections, and argue motions.").

The government contends that Mr. Sitzmann has waived and forfeited his right to appear *pro se* in this case because (1) he has vacillated on the issue, thereby making his request equivocal and thereby waiving his right, and (2) he has forfeited the right to self-representation by using the right as a tactic for delay, disruption, and manipulation of the legal system.  <u>See</u> Opp. at 17, 21.  Mr. Sitzmann, through counsel, disputes that he has waived his right to proceed *pro se* and requested a hearing.  <u>See</u> Reply at 1-2.  That hearing was held on October 28, 2011, and this matter now is ripe for decision.

The Court concludes that Mr. Sitzmann (1) has vacillated in his request to proceed *pro se*; (2) has requested a form of hybrid representation that the Constitution does not guarantee; and (3) has utilized the constitutional right to self-representation in order to manipulate the legal system.  Consequently, Mr. Sitzmann's request to proceed *pro se* is not clear and unequivocal, and therefore it will be denied.

*A. Vacillation*

The United States Court of Appeals for the District of Columbia Circuit has not addressed circumstances in which a criminal defendant repeatedly alternates between requesting to proceed *pro se* or to be represented by counsel. A number of other circuits, however, have held that the right to self-representation is waived through conduct indicating that the defendant is "'vacillating on the issue.'" Gill v. Mecusker, 633 F.3d 1272, 1295 (11th Cir. 2011) ("'Even if defendant requests to represent himself, . . . the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether.'") (alteration in original) (quoting Brown v. Wainwright, 665 F.2d 607, 611 (5th Cir. 1982)); see United States v. Bankoff, 613 F.3d at 374; Wilson v. Walker, 204 F.3d 33, 37 (2d Cir. 2000); Williams v. Bartlett, 44 F.3d at 100 ("[W]hen a defendant changes his mind [about being represented by counsel] after trial begins, or does so repeatedly at any stage, . . . . the conduct can be considered vacillation, and a trial judge may find the request equivocal."); United States v. Bennett, 539 F.2d 45, 51 (10th Cir. 1976) (holding that defendant "forfeited his right to self-representation by his vacillating positions," and thereby failed to show "a clear and unequivocal position on self-representation"); see also McKaskle v. Wiggins, 465 U.S. 168, 182 (1984) ("Wiggins' *pro se* efforts were undermined primarily by his own, frequent changes of mind regarding counsel's role.").

A conditional waiver of the right to counsel is not automatically deemed vacillation. See Williams v. Bartlett, 44 F.3d at 100 ("[A] defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative[.]"); Adams v. Carroll, 875 F.2d 1441, 1444-45 (9th Cir. 1989). But a request to

17

proceed *pro se* is considered to be equivocal when a defendant's primary interest is in arranging for new counsel.  See Gill v. Mecusker, 633 F.3d at 1295; United States v. Mendez-Sanchez, 563 F.3d at 939 (holding that a defendant equivocates when he requests to represent himself "while at the same time stating a preference for representation by a different lawyer"); United States v. Frazier-El, 204 F.3d at 560 ("Taking the record as a whole, . . . we are satisfied that the district court was justified, when confronted with Frazier-El's vacillation between his request for substitute counsel and his request for self-representation, in insisting that Frazier-El proceed with appointed counsel.") (internal citation omitted).

In Gill v. Mecusker, after the defendant filed a motion requesting that the court discharge appointed counsel and permit him to proceed *pro se*, he stated, at an oral hearing: "I am asking too for the Court to allow me to be my own attorney until such time as I can retain the necessary counsel[.]"  Gill v. Mecusker, 633 F.3d at 1296.  In those circumstances, the Eleventh Circuit concluded that the defendant had vacillated between the desire to represent himself and being represented by counsel.  Id. at 1295-96.

Similarly, in Koon v. Rushton, 364 Fed. App'x. 22 (4th Cir. 2010), after requesting to be permitted to proceed *pro se*, the defendant "stated in a letter to the trial court that he '*may*' represent himself, . . . and noted his '*possible* (pro se) representation.'"  Koon v. Rushton, 364 Fed. App'x at 28 (emphasis in original).  In addition, "in [the defendant's] letters to the court, he made several references to '[his] attorney[.]'"  Id.  Under those circumstances, the Fourth Circuit held that the defendant "displayed equivocating, contradicting, and vacillating behavior," thereby "waiv[ing] his right to self-representation[.]"  Id.

In United States v. Bankoff, prior to his trial, the defendant requested the right to proceed *pro se*; his request was granted and his counsel remained as standby counsel. United States v. Bankoff, 613 F.3d at 363. During the final pretrial conference, however, Bankoff changed his mind and stated that he no longer wished to proceed *pro se*, at which time standby counsel took over. Id. at 363-64. But when trial began the following week, Bankoff then demanded to give the opening statement for the defense; the trial court informed Bankoff that it would not permit him to represent himself that day. Id. at 364. After his conviction, Bankoff appealed on the ground that he was denied his Sixth Amendment right to self-representation. Id. at 372. The Third Circuit rejected that argument. Id. at 374. First, the court held that Bankoff's second request to proceed *pro se* was made during trial and thus was untimely, and the trial court did not abuse its discretion in denying the defendant's request. See id. at 373-74. Going further, however, the court concluded that "[i]n light of Bankoff's repeated changes-of-heart and angry outburst during the prosecutor's opening statement, we think it apparent the [c]ourt was concerned that Bankoff's renewed request was equivocal (a finding that would justify denying *even a timely* request to proceed *pro se*)." Id. at 374 (emphasis added).

Mr. Sitzmann repeatedly has vacillated between his request to proceed *pro se* and with counsel. Mr. Sitzmann's relationship with Mr. Beshouri provides an illustrative example of his continuous vacillation: First, he requested the right to proceed *pro se* with Mr. Beshouri as standby counsel, while simultaneously attempting to reserve the ability to reverse course and allow Mr. Beshouri to proceed as counsel of record if Mr. Sitzmann so chose. Then Mr. Sitzmann wrote letters to this Court and to others complaining about Mr. Beshouri and requesting new standby counsel. Then he retracted his request for new standby counsel. He then

decided to retain his own counsel; sent the Court another letter complaining about Mr. Beshouri; then immediately sent another letter attempting to withdraw his complaints. He restated his withdrawal at a status conference and requested that Mr. Beshouri stay on as local counsel. The next day he mailed government counsel a letter asking that he have no more contact with Mr. Beshouri in the future.

Mr. Sitzmann has demonstrated the same vacillating behavior with other counsel. He vacillated when initially requesting to proceed *pro se* by claiming that he was willing to accept a different counsel of record. Mr. Sitzmann also vacillated with respect to Mr. Klugh: Mr. Sitzmann first asked to proceed as co-counsel with Mr. Klugh; then accepted him as counsel; then made disparaging allegations about Mr. Klugh to the Court and accepted his withdrawal; then objected to his withdrawal. As in <u>Bankoff</u>, Mr. Sitzmann's many prior vacillations demonstrate that his current request to proceed *pro se* is either insincere or infirm; his many prior reversals of course make it impossible for the Court to conclude that he now is clearly and unequivocally waiving his right to counsel.

Moreover, as in <u>Gill</u>, Mr. Sitzmann's request is equivocal because he has stated on a number of occasions that he intends to retain private counsel in the future. During the status conferences on August 25, 2008 and September 23, 2008, Mr. Sitzmann demonstrated that his initial request to proceed *pro se* was, at the very least, conditional (though not necessarily equivocal): he remained unsure whether he wanted to represent himself or accept appointed counsel. See <u>Williams v. Bartlett</u>, 44 F.3d at 100 ("[A] defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative[.]"). But later, after over a year of proceeding on his own with the help of standby

counsel, he claimed that he always intended to find and retain his own counsel.[3]  In his April 25, 2011 letter to Mr. Abbenante, Mr. Sitzmann stated that he wants to "get the Court to reappoint . . . Richard [Klugh] and John [Bergendahl.]"  3d Letter from Gregory J. Sitzmann to the Court, Nov. 3, 2011, Attach. 2, Letter from Gregory J. Sitzmann to Thomas Abbenante at 1, Apr. 25, 2011.

Mr. Sitzmann has demonstrated that his most recent request is part of the same pattern of vacillation that he engaged in before: requesting to proceed *pro se* only until he can arrange for new counsel — *not* for the purpose of representing himself at trial.  Mr. Sitzmann submitted a motion requesting the right to proceed *pro se* on June 2, 2011.  See Def. Req. at 1. But during the June 15, 2011 status conference, Mr. Sitzmann, through Mr. Abbenante, indicated that he in fact was requesting that the Court appoint an additional attorney or two to assist Mr. Abbenante in the preparation of this case.  Mr. Sitzmann then attempted to reinstate his request to proceed *pro se* through his August 18, 2011 motion.  Mr. Sitzmann's reaffirmation of his request at the October 28, 2011 status conference does not resolve the dilemma created by these vacillations because Mr. Sitzmann has demonstrated that he may make a clear statement in open court one day, then reverse himself the next.  For instance, Mr. Sitzmann repeatedly stated that he accepted Mr. Klugh's withdrawal at the April 18, 2011 status conference, yet he reversed himself days afterward.  See Def. Req. at 2; Mot. Obj. at 2.

---

[3]    That Mr. Sitzmann was allegedly hampered in his attempts to retain counsel while being held in protective custody does not change the Court's analysis.  And, in any case, the Court concludes that Mr. Sitzmann's representations to the Court did not reflect his actual intentions.

Mr. Sitzmann also vacillated since his most recent request to proceed *pro se*. After his August 18, 2011 motion to proceed *pro se* and the October 28, 2011 status conference, Mr. Sitzmann sent the Court a letter "request[ing] a change of court appointed counsel." Request to Replace Counsel at 2. "A request to represent oneself made while at the same time stating a preference for representation by a different lawyer and rearguing the change of counsel motion is insufficient to invoke Faretta." United States v. Mendez-Sanchez, 563 F.3d at 939; see also United States v. Frazier-El, 204 F.3d at 560 (holding that district court was justified in insisting that defendant proceed with appointed counsel, "when confronted with [defendant's] vacillation between his request for substitute counsel and his request for self-representation").

Mr. Sitzmann's many contradictory requests stray so far from "clear and unequivocal," they verge on the opaque. In 2011 alone, to date, Mr. Sitzmann has sent a letter to the Court that disparages Mr. Klugh and accepted his withdrawal; accepted Mr. Abbenante as appointed counsel; requested to reinstate Mr. Klugh; requested to keep Mr. Abbenante on, but add additional appointed counsel; requested to proceed *pro se*; and requested to replace Mr. Abbenante with different appointed counsel after making disparaging remarks about him. Because Mr. Sitzmann constantly has vacillated in the past between appearing *pro se* and with appointed counsel of record, and because he has vacillated repeatedly between his most recent request to proceed *pro se* and to replace appointed counsel, the Court concludes that his request is equivocal, and therefore it will be denied.

### B.  Hybrid Representation

"Faretta does not require a trial judge to permit 'hybrid' representation[.]" McKaskle v. Wiggins, 465 U.S. at 183. "A defendant does not have a constitutional right to

choreograph special appearances by counsel." Id. "Faretta applies only where a defendant chooses to proceed *pro se* and *thereby forgoes the benefits associated with the right to counsel*." United States v. Leggett, 81 F.3d at 224 (emphasis added).

In United States v. Tarantino, our court of appeals held that a defendant's request to proceed *pro se* was properly denied when he refused to unequivocally assert his intention to proceed *pro se*. United States v. Tarantino, 846 F.2d at 1420. As the court stated:

> [A]lthough the [district] court carefully and repeatedly explained to Burns that he had to choose between representing himself and being represented by appointed counsel, and gave Burns numerous opportunities to unequivocally assert his intention to proceed *pro se*, Burns *never* made such an assertion. Instead, he seemed to desire some sort of hybrid form of representation, whereby both he and his appointed counsel would be permitted to examine witnesses, make objections, and argue motions. While the district court would have been within its discretion in permitting this practice, Burns did not have a constitutional right under the Sixth Amendment to combine self-representation with representation by counsel.

Id. (emphasis in original). The D.C. Circuit added that "[i]t would not be terribly cynical to suppose that Burns' equivocal requests were made more with an eye to creating an issue on appeal than for any other purpose." Id.

Mr. Sitzmann previously has couched requests to utilize hybrid representation in the language of a request to proceed *pro se*. Although the Court has permitted Mr. Sitzmann's prior standby counsel to file motions, the Court has explained to Mr. Sitzmann that he does not have the right to proceed *pro se* at trial while retaining the benefits of counsel. See Hr'g Tr. at 11-12, Feb. 2, 2010 [Dkt. No. 57]. When Mr. Sitzmann initially retained Mr. Klugh, he requested that the Court permit hybrid representation at trial by allowing Mr. Sitzmann to act as

co-counsel.  Earlier, while Mr. Sitzmann was ostensibly proceeding *pro se*, Mr. Beshouri filed

motions on his behalf with the Court's permission.  Mr. Sitzmann again maintained a hybrid

representation system with Mr. Carroll, who filed several motions and conducted investigations

on behalf of Mr. Sitzmann although he was only standby counsel.

    One of Mr. Sitzmann's several recent filings requests that the Court appoint a

team of attorneys who will prepare the case along with him and Mr. Abbenante.  <u>See</u> Def. Req.

at 2 ("Defendant request [sic] that this Court reinstate Defendant to his previous Pro-se statues

[sic] and *appoint two additional Attorneys to assist Defendant and Mr. Abbenante in preparing*

*and presenting* Defendant's case before this Court.") (emphasis added).  Such a request — where

Mr. Sitzmann simultaneously requests the right to proceed *pro se* and to utilize hybrid

representation — is not a clear invocation by Mr. Sitzmann of his <u>Faretta</u> rights.  <u>See</u> <u>United</u>

<u>States v. Tarantino</u>, 846 F.2d at 1420.  Although Mr. Sitzmann later stated that he understood

that standby counsel would not assist in presenting his case at trial, this representation does not

resolve the Court's concerns created by his many and varied requests.  This is especially so

because Mr. Sitzmann has made clear statements before the Court on prior occasions, only to

reverse himself days later.

    Mr. Sitzmann's most recent request to "*return* to his previous Pro-se status," Mot.

at 1 (emphasis added), is again unclear.  His prior *pro se* status was at times a form of hybrid

representation and otherwise it was merely a makeweight while he prepared to hire his own

counsel.  Neither situation is guaranteed to Mr. Sitzmann by the Sixth Amendment.  After Mr.

Sitzmann's many vacillations between requesting to be represented by counsel; to represent

himself; or to utilize hybrid representation, the Court cannot conclude that he has "clearly and

unequivocally" invoked his right to self-representation.  <u>United States v. Bankoff</u>, 613 F.3d at

373.  Because his request is not "an articulate and unmistakable demand . . . to proceed *pro se*,"

the Court concludes that he has not waived his right to counsel.  See <u>United States v. Leggett</u>,

81 F.3d at 224.

### C.  Manipulation

A defendant's "right to self-representation is not absolute."  <u>Martinez v. Court of</u>

<u>Appeal of Cal.</u>, 528 U.S. 152, 162 (2000).  As the Supreme Court has stated, "the government's

interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's

interest in acting as his own lawyer."  <u>Id</u>.  That government interest forecloses a defendant's use

of "the right of self-representation 'as a tactic for delay, for disruption, for distortion of the

system, or for manipulation of the trial process.'"  <u>United States v. Mosley</u>, 607 F.3d 555, 558

(8th Cir. 2010) (quoting <u>United States v. Edelmann</u>, 458 F.3d 791, 808-09 (8th Cir. 2006)).

Thus, "[a] trial court must be permitted to distinguish between a manipulative effort to present

particular arguments and a sincere desire to dispense with the benefits of counsel."  <u>United States</u>

<u>v. Frazier-El</u>, 204 F.3d at 560; see <u>United States v. Reddeck</u>, 22 F.3d 1504, 1510 (10th Cir. 1994)

("We have repeatedly shown concern with the use of the right to waive counsel as a 'cat and

mouse' game with the courts.").  The Court concludes that throughout this protracted criminal

litigation, Mr. Sitzmann consistently has used requests to retain new counsel or to proceed *pro se*

as a means of manipulating the Court and his counsel; to delay his case; and potentially to create

an issue on appeal.

In United States v. Frazier-El, the defendant repeatedly complained to the trial court about his appointed counsel's refusal to argue that Frazier-El was not under the jurisdiction of the United States because of his religious and political affiliations.  See United States v. Frazier-El, 204 F.3d at 557.  During a motions hearing, the trial court elicited from Frazier-El that he was requesting new counsel who would present the arguments he wished, or, alternatively, to proceed *pro se* in order to make those arguments himself.  See id. at 557-58. The trial court denied his request, see id. at 558, and the Fourth Circuit affirmed.  See id. at 560. The court of appeals concluded that the context of Frazier-El's request "suggest[s] more a manipulation of the system than an unequivocal desire to invoke his right of self-representation." Id. at 560.  Thus, "the district court was justified, when confronted with Frazier-El's vacillation between his request for substitute counsel and his request for self-representation, in insisting that Frazier-El proceed with appointed counsel."  Id.

In United States v. Bush, 404 F.3d 263 (4th Cir. 2005), the defendant wanted to dismiss his counsel due to his counsel's refusal to file motions as Bush requested; the defendant further stated that he wanted to represent himself, but was not ready for trial and he "would have pled guilty to this case a long time ago if [he] had just been given [his] day in court on a fair motions hearing."  United States v. Bush, 404 F.3d at 272.  The Fourth Circuit determined that, under those circumstances, the defendant's request to proceed *pro se* was properly denied as an attempt to manipulate and delay proceedings.  Id.  Similarly, in United States v. Mackovich, 209 F.3d 1227 (10th Cir. 2000), the Tenth Circuit held that the defendant's "requests for self-representation were merely a tactic for delay," where the defendant utilized appointed counsel for months before requesting leave to represent himself and then sought several

continuances.  <u>United States v. Mackovich</u>, 209 F.3d at 1237.  In both <u>Bush</u> and <u>Mackovich</u>, the defendants' requests were made close to the start of trial.  <u>See</u> <u>United States v. Bush</u>, 404 F.3d at 272; <u>United States v. Mackovich</u>, 209 F.3d at 1237-38.

Mr. Sitzmann has used the right to proceed *pro se* to attempt to manipulate the Court to appoint new counsel.  In Mr. Sitzmann's August 18, 2008 letter, he represented to the Court that he would reverse his *pro se* status if the Court appointed a new attorney that was to his satisfaction.  Mr. Sitzmann's most recent request to proceed *pro se* was made on the heels of the Court's dismissal of Mr. Klugh, and subsequently he has requested that the Court replace Mr. Abbenante.  It would not strain reason to believe that Mr. Sitzmann's primary purpose in requesting to proceed *pro se* is to attempt to influence the Court in deciding his requests to replace current counsel.

As in <u>Bush</u>, Mr. Sitzmann also has used the right to proceed *pro se*, along with other tactics, to attempt to manipulate his various appointed counsel.  Mr. Sitzmann explained during an August 25, 2008 hearing that he wished to dismiss Mr. Virgilio because of a disagreement on trial strategy.  Mr. Sitzmann's November 3, 2008 letter explained that his request to dismiss Mr. Beshouri was for similar reasons.  In addition, Mr. Sitzmann filed complaints against Mr. Beshouri and alleged that Mr. Klugh was suffering from psychological and financial problems.  That both complaints discuss Mr. Sitzmann's disagreements with his counsels' trial strategies demonstrates that these complaints were made, at least in part, due to Mr. Sitzmann's desire to exert control over his counsel.

Mr. Sitzmann's statements during the November 3, 2008 status conference again demonstrate that he uses requests to replace counsel or proceed *pro se* as a means of

manipulating the Court and his counsel. At that hearing, he stated that his interest in removing Mr. Beshouri was to expedite his motions and to attempt to alter his status at the D.C. Jail, not to address actual problems with his appointed counsel; indeed, he flatly admitted that he believed Mr. Beshouri was competent. See Hr'g Tr. at 9, Nov. 3, 2008 [Dkt. No. 50] ("By no means have I thought that Mr. Beshouri is not a competent attorney. I do not want that implication, okay?"). Thus, as the Court stated to Mr. Sitzmann, "it's not that you're saying anything about his competence. It's that you're saying that you're not getting . . . attention[.]" Id. Mr. Sitzmann's complaints about Mr. Abbenante reflect this same desire for attention. Mr. Sitzmann repeatedly has stated that he does *not* believe Mr. Abbenante is not competent; instead, Mr. Sitzmann has attempted to manufacture a conflict of interest by disparaging Mr. Abbenante regarding matters that have no bearing on Mr. Sitzmann's case. Throughout these proceedings, Mr. Sitzmann has used every means he could devise to exert control over his many counsels' trial strategy and to compel the Court to appoint new counsel.

Mr. Sitzmann also has used the right to proceed *pro se*, along with other strategies, to manipulate this criminal proceeding in order to unduly delay his case. As in Mackovich, whenever Mr. Sitzmann's case has been on the verge of going forward, Mr. Sitzmann has manufactured reasons to delay proceedings that demonstrate that his invocation of his Faretta rights is not sincere. During three different periods, Mr. Sitzmann filed preliminary motions, which then have been re-filed as Mr. Beshouri, Mr. Carroll, and Mr. Klugh each joined the case. As the preliminary motions period has neared an end, Mr. Sitzmann created issues with each counsel, causing the process to repeat itself. Similarly, Mr. Klugh withdrew after raising a conflict of interest partially created by Mr. Sitzmann's actions and after Mr. Sitzmann attempted

to remove Mr. Klugh, claiming he was incompetent. In addition, these proceedings were delayed for nine months as Mr. Klugh waited for financing from Mr. Sitzmann's associates. Mr. Klugh's withdrawal created further delay in these proceedings as Mr. Abbenante has required time to transition into the case. Although not on the eve of trial, a firm trial date now finally has been set. These disruptions are sufficient for the Court to conclude that Mr. Sitzmann's request is a further effort to delay and manipulate the trial proceedings.

Indeed, throughout this litigation, Mr. Sitzmann has engaged in a pattern of behavior designed to delay his case. Mr. Sitzmann initially accepted Mr. Virgilio, Mr. Beshouri, Mr. Klugh, and Mr. Abbenante as his counsel and spoke highly of their competence in open court. He has then attacked each of these attorneys in similar letters to the Court, claiming ethical and legal violations and disparaging them personally. When Mr. Beshouri and Mr. Klugh were on the verge of leaving the case, Mr. Sitzmann reversed himself again and attempted to keep them on. This pattern demonstrates that Mr. Sitzmann is not interested in proceeding with this case through counsel or on his own. His interest is in prolonging these proceedings for as long as he can.

Mr. Sitzmann's misrepresentations to the Court with regard to Mr. Klugh's withdrawal further demonstrate his intent to distort these proceedings and are potentially an attempt to create issues for an appeal. See United States v. Tarantino, 846 F.2d at 1420. During the April 7, 2011 status conference, the Court expressly and repeatedly discussed Mr. Klugh's withdrawing as counsel. And yet, Mr. Sitzmann's June 2, 2011 motions claim that the issue was never discussed. Similarly, during the April 18, 2011 status conference, Mr. Sitzmann repeatedly stated he "ha[d] no problem with Mr. Klugh . . . withdrawing." Hr'g Tr. at 18, Apr. 18, 2011

[Dkt. No. 117]; see id. at 22, 24. Yet, in his June 2, 2011 motion to be reinstated as *pro se* counsel and to have additional standby counsel appointed, Mr. Sitzmann simultaneously admits that he accepted Mr. Klugh's withdrawal on April 18, 2011, but then asserts that the Court dismissed Mr. Klugh over his objection. Compare Def. Req. at 2 ("At the [April 18, 2011] hearing this Court announced that it was dismissing Defendant's retained counsel and appointed Mr. Thomas Abbenante to represent Defendant, *to which he agreed*.") (emphasis added), with Def. Req. at 1 (stating that the "Court chose to dismiss Defendant's retained Counsel, *over his objection*") (emphasis added). These completely contradictory statements further indicate that Mr. Sitzmann's requests are "made more with an eye to creating an issue on appeal than for any other purpose." United States v. Tarantino, 846 F.2d at 1420.

There is no indication that Mr. Sitzmann's current request is not another attempt to control his attorney's trial strategy and manipulate this case. As with Mr. Beshouri, Mr. Sitzmann initially expressed no problems with proceeding with Mr. Abbenante. Mr. Sitzmann appeared in court with Mr. Abbenante and made no objection when Mr. Abbenante stated in Mr. Sitzmann's presence that Mr. Sitzmann accepted Mr. Abbenante as his counsel. Mr. Sitzmann's recent letter alleging illegal conduct by Mr. Abbenante is another attempt to manipulate the proceedings, as Mr. Sitzmann has indicated that the purpose of making these allegations is to induce the Court to remove Mr. Abbenante as counsel of record. See Letter from Gregory J. Sitzmann to the Court at 1, October 8, 2011 ("I am notifying this Court as I believe Mr. Abbenante has brought the issue of his ability to represent anyone in an ethical way to question."). Because Mr. Sitzmann's request is one of many attempts to manipulate the trial process, the Court concludes that he has waived his right to proceed *pro se*.

*D. Request to Substitute Court-Appointed Counsel*

One final matter requires discussion. Mr. Sitzmann recently has requested that the Court replace his current court-appointed counsel, Mr. Abbenante, with other court-appointed counsel. Mr. Sitzmann also appears to request that the Court reappoint his counsel of choice, Richard Klugh and John Bergendahl. The Court will deny these requests because Mr. Sitzmann is not entitled to appointed counsel of choice, and because Mr. Sitzmann has failed to show good cause for substitution of his appointed counsel, Mr. Abbenante.

As discussed, in a letter to the Court dated October 8, 2011, Mr. Sitzmann accused Mr. Abbenante of possibly having engaged in some type of alleged criminal conduct unrelated to this case — that is, allegedly spreading the ashes of his friend at the Vatican. See Letter from Gregory J. Sitzmann to the Court at 1, Oct. 8, 2011 [Dkt. No. 133]. Mr. Sitzmann explained in that letter that he was "notifying this Court as [he] believe[s] Mr. Abbenante has brought the issue of his ability to represent anyone in an ethical way to question." Id. Mr. Sitzmann was given an opportunity to discuss his concerns regarding Mr. Abbenante during the October 28, 2011 status conference. There, Mr. Abbenante presented Mr. Sitzmann's arguments for self-representation, while at the same time assuring the Court and Mr. Sitzmann that he has done nothing illegal or unethical and that he is prepared to continue to represent Mr. Sitzmann to the fullest of his ability, either as counsel of record or as standby counsel.

Six days later, on November 3, 2011, Mr. Sitzmann requested in writing that the Court replace Mr. Abbenante with another court-appointed lawyer, *not* that the Court permit him to represent himself. Request to Replace at 2 ("Defendant request [sic] a change of Court Appointed Counsel."). According to Mr. Sitzmann, Mr. Abbenante "created a conflict of

interest" when he allegedly expressed to Mr. Sitzmann his intent to spread the ashes of his friend at the Vatican. Id. at 1.

In a separate letter dated November 3, 2011 and filed with the Court on November 9, 2011, Mr. Sitzmann "enclosed 2 letters for [the Court] to consider in making [a] decision concerning the pending motions for [him] to return to Pro-se and for [his] request to change counsel." 3d Letter from Gregory J. Sitzmann to the Court at 1, Nov. 3, 2011 [Dkt. No. 135]. In the second of the enclosed letters, addressed to Mr. Abbenante and dated April 25, 2011, Mr. Sitzmann stated: "[A]lthough [Mr. Abbenante is] very qualified to represent me [he is] a single practitioner and doing this for CJA funds. I need to get the Court to reappoint my COUNCEL [SIC] OF CHOICE, Richard [Klugh] and John [Bergendahl.]" Id., Attach. 2, Letter from Gregory J. Sitzmann to Thomas Abbenante at 1, Apr. 25, 2011 (emphasis in original) [Dkt. No. 135].

A criminal defendant who does not require appointed counsel has "the right . . . to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). In other words, a criminal defendant who hires his own lawyer can, as a general matter, hire whomever he wants. Mr. Sitzmann, however, is not such a defendant — he acknowledges that he requires appointed counsel if the Court does not permit *pro se* representation. Where, as here, a criminal defendant requires appointed counsel, that defendant "has no constitutional right to *appointed* counsel of choice." United States v. Childress, 58 F.3d 693, 736 (D.C. Cir. 1995) (emphasis in original) (citing Wheat v. United States, 486 U.S. 153, 159 (1988)). The Court therefore will deny Mr. Sitzmann's request to appoint his counsel of choice.

Mr. Sitzmann "does have the right to effective representation by appointed counsel[.]" United States v. Graham, 91 F.3d 213, 221 (D.C. Cir. 1996). And that right "may be endangered if the attorney-client relationship is bad enough." Id. But a defendant seeking appointment of substitute counsel on such grounds has the burden of showing good cause, "such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication." Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991).

In his October 8, 2011 letter to the Court, Mr. Sitzmann asserted that Mr. Abbenante's alleged criminal conduct "brought the issue of [Mr. Abbenante's] ability to represent anyone in an ethical way to question." Letter from Gregory J. Sitzmann to the Court at 1, Oct. 8, 2011 [Dkt. No. 133]. That unfounded assertion was more than adequately dealt with by the government in its response to Mr. Sitzmann's October 8, 2011 letter filed on October 27, 2011. See supra at 12; see generally Gov't Resp., Oct. 27, 2011 [Dkt. No. 130]. Furthermore, Mr. Sitzmann was given an opportunity to discuss his concerns regarding Mr. Abbenante during the October 28, 2011 status conference. In what has become a familiar pattern, Mr. Sitzmann since has asserted that he now has a "clear[] . . . conflict of interest" with Mr. Abbenante, Request to Replace Counsel at 2, while simultaneously stating that Mr. Abbenante is "very qualified to represent him[.]" 3d Letter from Gregory J. Sitzmann to the Court, Nov. 3, 2011, Attach. 2, Letter from Gregory J. Sitzmann to Thomas Abbenante at 1, Apr. 25, 2011 [Dkt. No. 135]. In view of the representations made to the Court on October 28, 2011, and for the reasons discussed supra at 25-30, the Court concludes that the replacement of appointed counsel, Mr. Abbenante, is not appropriate, and that Mr. Sitzmann's purported conflict-of-interest concern is "ill-founded." United States v. Graham, 91 F.3d at 221. The Court therefore will deny Mr. Sitzmann's request to replace Mr. Abbenante.

### III. CONCLUSION

Throughout this case, Mr. Sitzmann has demonstrated that his interest is *not* truly in representing himself. He has engaged in a pattern of vacillation, delay, and manipulation, embracing new counsel until the case is ready to go forward, then manufacturing conflicts and besmirching his attorneys' characters in an attempt to replace them and further delay his case. He has filed a series of contradictory and inconsistent motions over the last several months that mirror his practice over the last three years of reversing and vacillating in his requests to proceed with and without counsel.

For the foregoing reasons, the Court concludes that Mr. Sitzmann has waived his right to proceed *pro se* and therefore will deny his motion to proceed *pro se* [Dkt. No. 119]. The Court also will deny Mr. Sitzmann's motion to replace his current counsel, Mr. Abbenante, with substitute counsel [Dkt. No. 136]. An Order consistent with this Opinion shall issue this same day.

/s/<br>
_____<br>
PAUL L. FRIEDMAN<br>
United States District Judge

DATE: November 28, 2011